Rico Perry v. Suzy Roy et al. Mr. McGovern? Good morning, Your Honor. Good morning. May it please the Court, my name is Benjamin McGovern and with me today is Amanda Amendola. Together we are pro bono counsel for the appellant, Rico Perry. I think the facts are well recited in the brief, so I'm not going to belabor them here unless the panel has any questions, and rather we'll dive right into the law. This appeal arises from the district court's entry of summary judgment in favor of the defendant, nurses, against Mr. Perry on his claim for deliberate indifference to serious medical needs. The law is well established that that inquiry has both a subjective and an objective component, and if it pleases the Court, I'd like to start with the subjective prong. The subjective prong of the 1983 test in this context requires two things. First, it requires that the defendants be aware of facts from which an inference could be drawn that there is an injury, and second, the law requires that defendants actually make that inference. Importantly here, the Supreme Court's made it clear that this inquiry can be proven in all the customary ways, including an inference from circumstantial evidence, which is what we think we have here. With regard to the first prong of the subjective component, we believe there's ample evidence in the record that defendants were aware of facts from which an inference could be drawn that Mr. Perry had a broken jaw. The first fact is that both defendants were aware that he had been recently involved in a physical altercation. The second is that Mr. Perry contends that he told both defendants, my jaw hurts, I think it's broken, I think I need to go to the hospital. Both defendants were also aware that Mr. Perry had bleeding in and around his mouth area. Nurse Roy knew from her examination that Mr. Perry had a cracked tooth. Mr. Perry testified at his deposition that he was having difficulty opening his mouth fully  Nurse Rocha, for her part, knew from her examination that Mr. Perry had a cut in his mouth and also a large egg on his forehead. Let's assume, let's assume that you're correct, that they knew that he might have, I mean they didn't have an x-ray. Certainly. But let's assume they knew he might have a broken jaw. Where I'm having trouble is why it therefore follows that waiting, what, 17 hours until some symptoms of distress develop to bring him to the hospital, how that is so far outside the ken of how you should treat someone, that we would declare it an Eighth Amendment violation. I mean, I can imagine a parent calling up a doctor and saying my kid just got punched, he thinks his jaw might be broken and the doctor says, well, see what happens. And how do you fill that gap of waiting to see what happened and then bringing him in? It's not like a heart attack. I agree, it's not like a heart attack. And I think that goes to the second prong of the subjective inquiry, which was whether or not the defendants actually made the inference that he had a broken jaw. And we think the record reflects at least some disputes of material fact about just the cursory nature of these examinations. The period of time, I think the 17 hours is relevant. But my question gave you the benefit of this. I'm assuming that they knew he might have a broken jaw. How do you satisfy the other prong? The objective prong? Yes. The objective prong. Okay, certainly. We think there's two ways that an injury can be objectively serious. First, it needs to be diagnosed by a physician as mandating treatment, or secondly, it needs to be sufficiently obvious to a layperson. I'll take the second one first, and I think the best way to talk about obvious to a layperson is to discuss two of the cases that are cited in the briefs. In the first one, which is the Gedrold case, which was issued by this court, the plaintiff had bruises and abrasions from an alleged assault. Next morning, he went to the hospital and he was x-rayed, and all x-rays were negative. And the evidence also established he required no more medical care than a sling and eye patch and some disinfectant. This court concluded there that there wasn't an objectively serious need because he was bruised but unbroken. I think there's a direct correlation here that Mr. Perry was both bruised, the defendant saw those bruised, and he was broken as evidenced by the nurse who examined him 17 hours later and said, I think you've got to go to a hospital. From the first doctor that saw him at St. Luke's who determined this was a very significant injury caused by a tremendous amount of force, and by the fact that he eventually needed surgery to repair that jaw. But I'm giving you that. Assume they knew it might well be broken. Why is it beyond the can of proper medical care to wait for the next day to see if any symptoms develop that cut one way or the other? I think in this case it has to do with what they objectively saw. And I think a lot of it has to do with him telling them that the jaw was broken as well as all the other injuries about the head. And I think it does matter the cursory nature of the examination. Let me put the question just slightly differently. Yes. I guess I think what we're trying to figure out is was there any additional harm, and we're sympathetic to the pain and suffering, but was there any additional physical harm caused by a 17-hour wait? Yes. The harm, we would suggest, Your Honor, there's evidence and certainly a jury could conclude. We can see that once he got to the hospital his jaw was repaired and it is fine now. The additional harm, and I think the defendants acknowledged this in the briefs themselves, is significant swelling on his right side and the fact that he was wheezing in his cell for 17 hours. We think that's relevant, that that is additional harm that could have been prevented had these two defendant nurses caught this and diagnosed it properly from the outset. Mr. Perry at the time was a brand new inmate to this facility. Almost the first thing that happens is he gets into this altercation and then he sees these two nurses who, frankly, I think a jury could conclude didn't listen to him when he said that his jaw was broken. He then sits in his cell for 17 hours wheezing as the swelling continues to grow. We contend that that's the additional harm. That was the harm of waiting the 17 hours. Was he given any treatment at all? Was he given at what point, Your Honor? When he first went to the nurses. When he first went to the nurses, Nurse Roy examined him and looked at his cracked tooth. She gave him gauze and rinsed for the tooth and said, you can put in a six-lip and you can see the dentist in three days. That was the extent of her examination. And we contend, the defendants suggest in their briefs that this is a medical negligence case. We don't believe it is with respect to the jaw, Your Honor. Perhaps with respect to the tooth. That's not what we're alleging here. That's not the injury that's the focus of the appeal. It's the jaw. It's the fact that he told them, I have a broken jaw. They didn't look at his jaw. They looked at his tooth, but not his jaw. With Nurse Rocha, it's even a little bit more stark because she was told that he had a broken jaw. She didn't even enter the cell to look at him. I think what we're all trying to get at is, you make a good point, the tooth. If they know the tooth is broken, it's going to require some care at some point. No claim that they had to rush him in for emergency treatment to a dentist. Similarly, if it had been a, conversely, if it had been a broken vertebrae in the neck, I think then it would be pretty obvious they should get him right away to the hospital. We're trying to get a sense of what in the record do you point us to that tells us that the jaw is at the broken vertebrae end of the spectrum that we could conclude that it's just beyond the pale not to have rushed them into the hospital. Yes, Your Honor. I would go back. I'd say two things. I would go back first to the severe swelling and wheezing that he had to endure for the 17 hours, and we contend he should not have. But that's some evidence that this injury was serious and should have been caught earlier. Is that swelling something that was apparent at the time that he went to see a nurse, or is this something that came up within the 17 hours? The evidence, I think, would reflect that the swelling got worse over time. The second point I would like to make more to Your Honor's question is that the first outside doctor that he saw here, which was a Dr. Fuhrman, his deposition is in the record. We cite to it in our briefs. He testified in essence that he found this to be a very significant injury caused by a tremendous amount of force, and he was troubled by the fact that it took 20 hours for this patient to be seen in the hospital. That's what I would point to, Your Honor. I think that's the key fact that shows this is not a paper cut. It's not a hangnail. It's more like the broken vertebrae than those kinds of things. That's what makes it an objectively serious injury. Counsel, let me ask you something. Sure. The altercation itself, was it documented somewhere in the prison records? It certainly was. There's a use of force report that is in the record, and I can find you the site if you give me a moment. But more specifically, I'm trying to figure out if the report was available to the nurses. I don't believe it was. Nurse Roy did her examination of Mr. Perry within five minutes of the altercation. I believe the evidence was she was in the immediate vicinity.  I believe the evidence would reflect that the report was prepared after Nurse Roy conducted her examination. I think it was two or three hours later as well. So, no, I do not believe that those reports would have been in the nurse's possession at the time. So does this prison have any way to communicate that kind of altercation to a treating professional? In other words, your client is saying, I'm in pain, I'm hurting, I think my jaw is broken, it's not a position. But if there's some way that the facts of the altercation are somehow communicated to the nurse, at least to me that would make a difference. So I'm trying to figure out if that's true or not. Yes, I think the facts are that Nurse Roy was in the immediate vicinity. I don't believe she witnessed the altercation, but I believe that's why he was brought to her, was because as a result of that altercation. And I would suggest that with respect to Nurse Rocha, between Mr. Perry saying, I've been involved in an altercation and the knot on the forehead and the bleeding and the cut in the mouth, that I think that inference can be drawn. I don't know what the general policy is, but I think in this case that the inference can be drawn, or certainly a jury could, that they were aware of that altercation. I see that my time is up. And so much, Your Honors, for many other questions. Thank you. Thank you. Mr. Whalen, good morning. Good morning. There was no error in the entry of summary judgment. There is no genuine issue of material fact as to either the objective or subjective prong. To take a big picture approach in response to Judge Kayette's questions, and you look at the totality of the circumstances, we have a situation where an inmate was evaluated by two nurses. When he developed swelling and difficulty with some wheezing, he was evaluated further. He then was referred to an ER room and worked up, and then referred to a further hospital for workup and ultimate surgery. All of that, three nursing evaluations, two hospital workups in a 24-hour period. The gravamen of the case is that he claims to have told the two nurses that he thought he had a broken jaw. Well, we have to assume on this record that he, in fact, told them that, don't we? We do. A lot of issues on credibility of that, but as a court understood it. We're assuming he told them that. Right. And why that doesn't have probative enough value to justify a genuine issue of fact is, one, he's not a physician. It's a self-diagnosis. It's conclusory. And it really does, as far as for a care provider, doesn't add a lot of information. The care provider has to go on what is observed, what kind of symptoms and signs. He's not saying, my jaw is hanging out. I got cracking. I can't move it. Those are not what he's reporting. He gives this conclusory statement that I don't think has a probative value. It certainly doesn't generate a genuine issue of material fact as to either objective or subjective property. What he said is not any different than he would have told the treating physician. People know how they feel when they're feeling well, and they know how they feel when they're not feeling well. So when doctors take a medical history from a patient and the patient says, I've been involved in an altercation and I think my jaw is broken, it's information that's no different. Oh, no, I agree. No, I believe that would be part of information that's conveyed. The question is, what value do you give that in the context of this record? There's no dispute that an examination did take place. They looked inside her mouth. Okay? The first, looking at Nurse Roy, the undisputed record is that did an examination, looked inside his mouth. He was able to open his mouth. He was able to talk. Saw a cracked tooth. Saw some bleeding. Gave him a gauze. Rinsed out his mouth. Gave him a gauze. There was no other obvious problem, no request for pain medication, and there was no swelling, no gross deformity that would lead anyone to believe that he had something more serious or was presenting with serious medical needs requiring more care than what was provided. So what I get at is, based on the objective findings, and despite his statement, I think I have a broken jaw, just because the care providers rejected that, I don't think you get entitled to a jury trial. But there was still more that, according to the record, right? He said, I think it's broken. He says, I can barely open my mouth. I'm having trouble opening my mouth. He says he could barely talk. He says, my jaw is hurting me. Something is wrong with my tooth. My head feels like it was lumped on, and he claims he told that his jaw was hurting. Yeah, he said he couldn't open his mouth wide, but he was able to talk, and it was sufficient for them to examine the jaw. Now, look at him. He ends up being right to the extent we have to take his statement as being made, but it was not an obvious situation that it was, in fact, broken. It was diagnosed by a CT scan in the end of the day, and I would submit that just because someone has a broken jaw does not mean that that is a categorical presentation of a serious medical need.  I would submit that my heel on its own is not causing any interference with sleeping or eating and those kinds of things. Here, what they had was the objective presentation. Yes, he tells them that it had a broken jaw, but based on what they saw, he didn't need any further medical attention. What about when he then, okay, you've addressed the initial. What about when he later passed out in his cell? Doesn't that provide an additional piece of information to the nurse that, whoa, he's taken a blow to the head, and now he's passed out in his cell, and yet they still don't send him to the hospital? That fell under Roy, I guess, Nurse Roy. He claims that that's happened. Well, you keep saying he claims. I understood. I understood. Look, it wasn't really relied upon by plaintiffs in their argument, either below or before this court. I'm not sure. I don't know what you can draw from that. Why did he pass out? Did it have anything to do with his jaw? Was he tired? What was it? What was the medical care that he needed at that time? You know someone's just taken a blow to the head, and now they've passed out? You think someone's just tired? Well, I'm just saying there's an extreme thinness of the record on that point. I understand the question, and all we have is this assertion that he was found unconscious and given smelling salts. He's seen by a nurse, and there's no other evidence of what his problem was. And what does that do? And it seems to me to draw the inference that has anything to do with a broken jaw is not a fair inference, and it certainly was the plaintiff's burden to build on that record if that was something that was significant in their claim. You know, there is a recognition in the law as far as the serious medical needs component that when you have a latent injury, a non-obvious injury, which I suggest this is what this case is about, you do have an obligation. You can satisfy that element if you put forth evidence that there was substantial harm caused by the delay, and there is just no evidence of any substantial harm. He developed swelling, but it's immediately acted upon, and he's immediately referred. So I suggest that they simply have not made out the objective component. And as far as a culpable state of mind, there's simply no evidence to draw that they acted recklessly or wanton disregard to this man's medical needs. They rely upon the statement that he complained that he had a broken jaw. That doesn't lead to a culpable state of mind based on the objective findings and what was in fact done. The only other evidence they submit is the statement that Mr. Perry claims to have overheard, which was the second nurse, Nurse Rocha, where he says that he heard her. She first said that I would agree to help him, but after talking to a correctional officer, she decided not to. That's about the extent of that offer. They point to testimony where he, get the exact quote, said that she told a correctional officer that she didn't believe that he had suffered a broken jaw. They say that that, therefore, allows for an inference and for a jury to find a culpable state of mind. I suggest it doesn't. Judge Saylor addressed that, I felt, very directly and accurately, and that's just confirming what she found in her judgment, based on her examination, that he didn't have a broken jaw or didn't present with significant medical needs requiring any further care than what was provided. Listen, we can critique the examinations that were done here in hindsight, and you can say, well, they should have done more. They should have put hands on his jaw, should have moved around, should have had a picture taken, should have done more, but that's not Eighth Amendment stuff. To the extent you can suggest that more should have been done, that it even rises to negligence or even rises to gross negligence as to their evaluation, that's not Eighth Amendment material. And I suggest the judgment was properly entered. Thank you.